IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

```
TYLANDA SMITH,                    )
                                  )
     Plaintiff,                   )
                                  )
v.                                )          No. 20-2860-TMP
                                  )
COMMISSIONER OF SOCIAL            )
SECURITY ADMINISTRATION,          )
                                  )
     Defendant.                   )
```

ORDER AFFIRMING THE COMMISSIONER'S DECISION

On November 24, 2020, Tylanda Smith filed a Complaint seeking judicial review of a social security disability benefits decision. (ECF No. 1.) Smith seeks to appeal from a final decision of the Commissioner of Social Security ("Commissioner") denying her disability insurance benefits under Title II of the Social Security Act ("the Act"). 42 U.S.C. §§ 401-34. For the reasons below, the decision of the Commissioner is AFFIRMED.

I.    BACKGROUND

On November 28, 2017, Smith applied for Social Security disability insurance benefits and supplemental security income under Titles II and XVI of the Act. (R. 15.) In both applications, she alleged disability beginning on September 1, 2017. (Id.) This date was later amended to January 1, 2019. (Id.) Smith's initial applications were all denied on May 1, 2018, and after

reconsideration on December 18, 2018. (Id.) Smith then requested a hearing on January 29, 2019, and that hearing was held on January 23, 2020, over video. (Id.)

After the hearing, the ALJ used the five-step analysis to conclude that Smith was not disabled from January 1, 2019, through the date of the ALJ's decision. (R. 16-34.) For the first step, the ALJ determined that Smith had not engaged in any substantial gainful activity since January 1, 2019, the alleged onset date of her disability. (R. 17.) For the second step, the ALJ considered Smith's medical history, going as far back as 2015, in order to determine whether Smith had any severe impairments. (R. 18.) Beginning in 2015, Smith consistently reported "difficulty ambulating due to low back pain" as well as occasional numbness in her extremities. (Id.) Her back pain caused a hospitalization in August 2017, where imaging showed "degenerative changes at multiple levels of the lumbar and thoracic spine." (Id.) Smith was then referred to physical therapy prior to the consideration of any corrective surgery. (Id.) Smith was hospitalized again in November 2017 and evaluated by Dr. Chiu To, a neurosurgeon at Saint Francis Hospital, and she was discharged on December 9 with a walker to assist her in ambulating. (Id.)

Concurrent with her back issues, Smith's care providers noted "a history of depression, asthma, and paranoid schizophrenia." (Id.) While the exact diagnoses were not fully consistent, Smith

consistently reported symptoms of anxiety, depression, paranoia, and frustration. (R. 26.) In April 2018, Smith sought emergency treatment at Saint Francis Hospital for an attempted suicide, where she tested positive for marijuana and benzodiazepines. (R. 18.) An evaluation upon admittance described the following:

> A hospitalization in 2007 for an overdose and complaints of anxiety and depression with daily crying spells, racing thoughts, rumination, possible auditory hallucinations, paranoia, intrusive worry, mood swings, arguments with her children, situational stressors, and lack of social support. A diagnosis of major depressive disorder without psychosis was offered[.]

(Id.)

Smith continued her visits to Dr. To and primary care throughout 2018, with both consistently noting back problems and chronic pain. (Id.) On July 2, 2018, Smith visited Dr. To and began "demanding pain medication[] and threatening to hurt someone because of her pain." (Id.) Smith was told that "she would be admitted to a psych unit or arrested if she continued to threaten harm to others." (Id.) On July 24 and August 28, 2018, Dr. William Little, Ph.D., evaluated Smith for trial of a surgically implanted spinal cord stimulator to remedy her back issues, as well as for the appropriateness of opioid pain medication after surgery. The ALJ summarized Little's report as follows:

> The claimant used a walker, wore a back brace, and appeared to be in considerable pain. She reported a history of degenerative disc disease, osteoporosis, and hypertension, with worsened low back pain following surgery in 2017. She reported treatment for major depressive disorder with psychotic features,

-3-

dissociative disorder, and paranoid schizophrenia with
12 inpatient admissions, most recently in April 2018.
The claimant and her 16 and 18 year-old daughters are
homeless, and live "wherever she can find a place to
stay." She denied any history of substance abuse or legal
issues and reported her many applications for disability
benefits had been denied. She dropped out of school in
the 11th grade and quit her last job due to back spasms.
Her report of paranoid schizophrenia without current
treatment appeared inconsistent with her history and
medical records, and her responses on the MMPI-2
possibly showed malingering or severe emotional
disorganization. Her overall cognitive functioning was
in the average range, but no conclusions could be drawn
about her emotional status. She received a rule out
diagnosis of major depressive disorder with psychotic
features and possible borderline personality disorder.
The claimant was not cleared for spinal cord surgery due
to her disorganized life circumstances. Inpatient
stabilization of her mood and obtaining social services
for her family were recommended, and she was advised to
seek emergency room evaluation for her mental health
issues.

(R. 19-20.) A later psychological evaluation by Dr. Samuel

Holcombe, Psy.D., on October 9, 2018 noted that:

The claimant reported an 11th grade education with a
history of "learning comprehension disability." She has
never been married and is currently living with a friend.
She reported "more than 15" inpatient admissions for
mental health treatment, most recently six years
earlier. She has been prescribed Valium and Xanax in the
past, but currently takes no psychotropic medications.
The claimant ambulated with a walker and wore an
elaborate back brace. She reported hypertension, a torn
ACL, and back pain due a spinal fusion from L1 to L6,
and claimed her body is rejecting the implanted
hardware. The claimant had a theatrical and dramatic
demeanor and reported she cannot drive due to
"disassociation disorder." She reported constant
auditory and visual hallucinations and was suggestable
to olfactory hallucinations. No convincing difficulties
with memory or cognition were displayed, she gave
questionable effort during the evaluation, and she
appeared to be a highly unreliable historian. She was
diagnosed with malingering and personality disorder with

-4-

> borderline and dependent traits. Specific functional
> limitations were not assessed due to the claimant's lack
> of effort and cooperation.

(R. 20.) Other examinations from 2018 were largely consistent with

these conclusions. (R. 20-21.) Doctors' visits from 2018 through

2019 describe her as either using a walker or a wheelchair to move.

A recurring theme in Smith's records is her desire to be

cleared for the previously mentioned spinal stimulator surgery.

See (R. 21-23) (Smith "only started coming to [mental health

counseling] because she was told she needed a psychiatric

evaluation in order to be cleared for spinal stimulator surgery.")

This clearance required her to pass a psychiatric evaluation, which

she finally did sometime before January 7, 2020, when the

stimulator was implanted on a trial basis. (R. 23.) In summarizing

Smith's impairments, the ALJ noted the opinion of Dr. Bheerendra

Prasad, Smith's primary care physician:

> [Dr. Prasad] reported the claimant's diagnoses as lumbar
> disc herniation, muscle tear, cervical myelopathy, and
> lumbar spinal stenosis. The claimant's symptoms include
> chronic back pain, leg pain, difficulty walking, and
> tremors from pain. She wears a brace and straight leg
> raise tests reproduce her back and leg pain. The claimant
> reports drowsiness and dizziness as medication side
> effects. The claimant can sit, stand, or walk a total of
> less than four hours over an eight-hour workday and can
> never lift and carry any weight, among other
> restrictions.

(R. 23-24.) After considering all the evidence, the ALJ concluded

that Smith suffered from "chronic pain syndrome; lumbar spine post-

laminectomy syndrome, status post spinal cord stimulator

implantation in January 2020; obesity; hypertension; major depressive disorder; post-traumatic stress disorder; and schizophrenia." (R. 17.) Smith did not allege any other severe impairments at the hearing or in any filings.

At the third step, the ALJ concluded that Smith's impairments do not meet or medically equal, either alone or in the aggregate, the severity of one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 24.) The ALJ noted that Smith "does not specifically assert that any physical listing is met or equaled" and found that "the record does not establish the medical signs, symptoms, laboratory findings or degree of functional limitation required to meet or equal" any of the listings. (Id.) Similarly, Smith's mental impairments all imposed only "moderate limitations in each of the four paragraph B functional areas" rather than the one "extreme" or two "marked" limitations required to be deemed disabled. (Id.) These determinations were based on examinations, reviews, and reports from the treating and non-treating clinicians detailed above, as well as Smith's prior statements, reported symptoms, and hearing testimony. The ALJ specifically noted how persuasive she found each clinician's opinion and Smith's own account. (R. 24-29.)

Accordingly, the ALJ then had to determine whether Smith retained the residual functional capacity ("RFC") to perform past relevant work or could adjust to other work. The ALJ found that:

> [Smith] has the residual functional capacity to perform
> sedentary work as defined in 20 CFR 404.1567(a) and
> 416.967(a) except she can occasionally climb ramps and
> stairs and occasionally balance. She can never climb
> ropes, ladders, or scaffolds and never kneel, stoop,
> crouch, or crawl; can occasionally operate foot controls
> with the bilateral feet; can have occasional exposure to
> extreme cold and vibration; and can have no exposure to
> hazards, including unprotected heights, dangerous moving
> mechanical machinery, and uneven or wet terrains. The
> claimant can understand, remember, and carry out simple
> and low-level detailed work-related tasks. She can
> maintain concentration, persistence, and pace to carry
> out simple and low-level detailed work-related tasks for
> two-hour periods over a normal workday with customary
> breaks; can have no interaction with the general public
> and could have only task-specific interaction with
> coworkers and supervisors on an infrequent and
> superficial basis. She can adapt to infrequent workplace
> changes. The claimant would work better with things than
> with people.

(R. 30.) Pursuant to 20 C.F.R. § 404.1567(a), sedentary work

"involves lifting no more than 10 pounds at a time and occasionally

lifting or carrying articles like docket files, ledgers, and small

tools." Additionally, "although a sedentary job is defined as one

which involves sitting, a certain amount of walking and standing

is often necessary in carrying out job duties. Jobs are sedentary

if walking or standing are required occasionally and other

sedentary criteria are met." 20 C.F.R. § 404.1567(a).

In reaching this RFC determination, the ALJ discussed Smith's

testimony and the medical evidence in the record. (R. 30.) The ALJ

found that while Smith's impairments could reasonably be expected

to cause the alleged symptoms, her statements concerning the

intensity, persistence and limiting effect of those symptoms was not entirely consistent with the record. (R. 30-31.)

To explain this determination, the ALJ detailed the medical opinions in the record, explaining how persuasive she found each one. The ALJ found Dr. To's February 2018 opinion not persuasive, since the "opinion addressed only a period prior to the amended alleged onset disability date . . . and appears to address only the claimant's ability to perform her past work[.]" (R. 31.) She found the initial DDS medical consultants' assessments "not persuasive because the finding of insufficient evidence provided no meaningful guidance." (Id.) Most relevantly, the ALJ also found the opinion of Dr. Prasad, Smith's treating physician, not persuasive, explaining her determination as follows:

> [M]any of the symptoms listed by Dr. Prasad are not reflected in the claimant's treatment notes and objective examination findings do not support most of the proposed functional limitations. This opinion was given shortly following the permanent implantation of a spinal cord stimulator and thus not only reflects the claimant's status at a difficult post-surgical time but also does not account for her anticipated improvement following this procedure. Further, the opinion does not acknowledge the claimant's work at the substantial gainful activity level for an extended period of time while having all of the indicated impairments with no indication that her symptoms had significantly worsened since stopping this work activity. Dr. Prasad's finding that the claimant could sit, stand, or walk a total of less than four hours over an eight-hour workday is inconsistent with the assessed need for no more than ninety minutes of unscheduled rest breaks, which does not account for much of the workday.

(R. 31-32.) However, the ALJ found the reconsideration DDS medical consultants' assessments partially persuasive "because many of the non-exertional provisions were consistent with the objective medical imaging and other evidence[.]" (R. 32.) In sum, the ALJ found as follows:

> [I found] the DDS reconsideration psychological assessments persuasive. I found the two consultative psychological evaluations, Dr. Little's opinions, the reconsideration DDS medical consultant's assessments, the mental health treatment notes from Alliance Health, and the hearing testimony and other statements of the claimant partially persuasive. [I found] [t]he initial DDS assessments, Dr. To's opinion, Dr. Mohan's opinion, and Dr. Prasad's opinion not persuasive, for the reasons set forth above.

(Id.) The ALJ did not adopt the findings of a prior adverse decision against Smith since there was new and material evidence regarding Smith's condition and because there had since been a change in the law regarding how to arrive at a final decision. (Id.)

At step four, the ALJ found that Hammond was unable to perform any past relevant work, based on the testimony of a vocational expert. (R. 32-33.) This past work included jobs as "janitor/industrial cleaner," an "unskilled folder," and a "wig maker." (R. 33.)

Finally, at step five, the ALJ found that "considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform."

(Id.) The ALJ explained that "[Smith's] ability to perform all or substantially all of the requirements of [sedentary work] has been impeded by additional limitations." (Id.) The vocational expert testified that, considering these limitations along with Smith's age, education, RFC, and work experience, Smith was nevertheless "able to perform the requirements of a representative occupation such as 'Assembler' [or] 'Fabricator/table worker[.]'" (R. 33-34.)

On March 19, 2020, the ALJ issued a decision detailing the findings summarized above. The Appeals Council denied Smith's request for review. (R. 1.) Smith now seeks judicial review of the ALJ's decision, which stands as the final decision of the Commissioner under § 1631(c)(3) of the Act. On appeal, Smith primarily argues that the ALJ erred by finding Dr. Bheerendra Prasad's opinion unpersuasive and by not providing a sufficient justification for finding that Smith's testimony was inconsistent with the record. (ECF No. 14 at 11, 14.)

## II.  ANALYSIS

### A.  Standard of Review

Under 42 U.S.C. § 405(g), a claimant may obtain judicial review of any final decision made by the Commissioner after a hearing to which he or she was a party. "The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the

-10-

cause for a rehearing." 42 U.S.C. § 405(g). Judicial review of the Commissioner's decision is limited to whether there is substantial evidence to support the decision and whether the Commissioner used the proper legal criteria in making the decision. Id.; Cardew v. Comm'r of Soc. Sec., 896 F.3d 742, 745 (6th Cir. 2018); Cole v. Astrue, 661 F.3d 931, 937 (6th Cir. 2011); Rogers v. Comm'r of Soc. Sec., 486 F.3d 234, 241 (6th Cir. 2007). Substantial evidence is more than a scintilla of evidence but less than a preponderance, and is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Kirk v. Sec'y of Health & Human Servs., 667 F.2d 524, 535 (6th Cir. 1981) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)).

In determining whether substantial evidence exists, the reviewing court must examine the evidence in the record as a whole and "must 'take into account whatever in the record fairly detracts from its weight.'" Abbott v. Sullivan, 905 F.2d 918, 923 (6th Cir. 1990) (quoting Garner v. Heckler, 745 F.2d 383, 388 (6th Cir. 1984)). If substantial evidence is found to support the Commissioner's decision, however, the court must affirm that decision and "may not even inquire whether the record could support a decision the other way." Barker v. Shalala, 40 F.3d 789, 794 (6th Cir. 1994) (quoting Smith v. Sec'y of Health & Human Servs., 893 F.2d 106, 108 (6th Cir. 1989)). Similarly, the court may not try the case de novo, resolve conflicts in the evidence, or decide

questions of credibility. <u>Ulman v. Comm'r of Soc. Sec.</u>, 693 F.3d
709, 713 (6th Cir. 2012) (citing <u>Bass v. McMahon</u>, 499 F.3d 506,
509 (6th Cir. 2007)). Rather, the Commissioner, not the court, is
charged with the duty to weigh the evidence, to make credibility
determinations, and to resolve material conflicts in the
testimony. <u>Walters v. Comm'r of Soc. Sec.</u>, 127 F.3d 525, 528 (6th
Cir. 1997); <u>Crum v. Sullivan</u>, 921 F.2d 642, 644 (6th Cir. 1990).

**B.   The Five-Step Analysis**

The Act defines disability as the "inability to engage in any
substantial gainful activity by reason of any medically
determinable physical or mental impairment which can be expected
to result in death or which has lasted or can be expected to last
for a continuous period of not less than 12 months." 42 U.S.C. §
423(d)(1). Additionally, section 423(d)(2) of the Act states that:

> An individual shall be determined to be under a
> disability only if his physical or mental impairment or
> impairments are of such severity that he is not only
> unable to do his previous work but cannot, considering
> his age, education, and work experience, engage in any
> other kind of substantial gainful work which exists in
> the national economy, regardless of whether such work
> exists in the immediate area in which he lives, or
> whether a specific job vacancy exists for him, or whether
> he would be hired if he applied for work. For purposes
> of the preceding sentence (with respect to any
> individual), "work which exists in the national economy"
> means work which exists in significant numbers either in
> the region where such individual lives or in several
> regions of the country.

Under the Act, the claimant bears the ultimate burden of
establishing an entitlement to benefits. <u>Oliver v. Comm'r of Soc.</u>

Sec., 415 F. App'x 681, 682 (6th Cir. 2011). The initial burden is on the claimant to prove she has a disability as defined by the Act. Siebert v. Comm'r of Soc. Sec., 105 F. App'x 744, 746 (6th Cir. 2004) (citing Walters, 127 F.3d at 529); see also Born v. Sec'y of Health & Human Servs., 923 F.2d 1168, 1173 (6th Cir. 1990). If the claimant is able to do so, the burden then shifts to the Commissioner to demonstrate the existence of available employment compatible with the claimant's disability and background. Born, 923 F.2d at 1173; see also Griffith v. Comm'r of Soc. Sec., 582 F. App'x 555, 559 (6th Cir. 2014).

Entitlement to social security benefits is determined by a five-step sequential analysis set forth in the Social Security Regulations. See 20 C.F.R. §§ 404.1520, 416.920. First, the claimant must not be engaged in substantial gainful activity. See 20 C.F.R. §§ 404.1520(b), 416.920(b). Second, a finding must be made that the claimant suffers from a severe impairment. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(5)(ii). In the third step, the ALJ determines whether the impairment meets or equals the severity criteria set forth in the Listing of Impairments contained in the Social Security Regulations. See 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526. If the impairment satisfies the criteria for a listed impairment, the claimant is considered to be disabled. On the other hand, if the claimant's impairment does not meet or equal a listed impairment, the ALJ must undertake the fourth step in the

analysis and determine whether the claimant has the RFC to return to any past relevant work. See 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1520(e). If the ALJ determines that the claimant can return to past relevant work, then a finding of "not disabled" must be entered. Id. But if the ALJ finds the claimant unable to perform past relevant work, then at the fifth step the ALJ must determine whether the claimant can perform other work existing in significant numbers in the national economy. See 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1520(g)(1), 416.960(c)(1)-(2). Further review is not necessary if it is determined that an individual is not disabled at any point in this sequential analysis. 20 C.F.R. § 404.1520(a)(4).

**C.   Medical Opinion Evidence**

Smith argues that the ALJ did not properly evaluate Dr. Prasad's medical opinion in accordance with the regulations. As a preliminary matter, because Smith filed her application for benefits after March 27, 2017, the ALJ was required to adhere to 20 C.F.R. § 404.1520c in considering medical opinions and prior administrative medical findings in the record. See Jones v. Berryhill, 392 F. Supp. 3d 831, 839 (M.D. Tenn. 2019). For claims filed before March 27, 2017, 20 C.F.R. § 404.1527 governs the evaluation of medical opinion evidence. The distinction is meaningful because the revisions to the regulatory language "eliminate the 'physician hierarchy,' deference to specific

-14-

medical opinions, and assigning 'weight' to a medical opinion."
Lester v. Saul, No. 5:20CV1364, 2020 WL 8093313, at *10 (N.D. Ohio,
Dec. 11, 2020), report and recommendation adopted, 2021 WL 119287
(N.D. Ohio Jan. 13, 2021) (quoting Ryan L.F. v. Comm'r of Soc.
Sec., No. 6:18-cv-01958-BR, 2019 WL 6468560, at *4 (D. Ore. Dec.
2, 2019)). The regulations now require ALJs to "not defer or give
*any* specific evidentiary weight, including controlling weight, to
*any* medical opinion{s} or prior administrative medical finding(s),
including those from [] medical sources." 20 C.F.R. § 404.1520c(a)
(emphasis added). Instead, ALJs now "articulate [their]
determination or decision [of] how persuasive [they] find all of
the medical opinions and all of the prior administrative medical
findings" in the record. Id. Persuasiveness is judged based on the
consideration of any medical opinion's supportability,
consistency, relationship with the claimant, and specialization.
20 C.F.R. § 404.1520(b)-(c). Other factors that may be considered
include the opinion source's familiarity with the other evidence
in the claim and experience with program policy and requirements.
Id. The ALJ is only required to explain "how [they] considered the
supportability and consistency factors for a medical source's
medical opinions or prior administrative medical findings" in
order to comply with the regulation. 20 C.F.R. § 404.1520(b)(2);
see also Strawn v. Comm'r of Soc. Sec., No. 20-cv-1065-TMP, 2021
WL 3487176, at *10.

Here, the ALJ explained that Dr. Prasad's opinion was "not persuasive" for the following reasons:

> Many of the symptoms listed by Dr. Prasad are not reflected in the claimant's treatment notes and objective examination findings do not support most of the proposed functional limitations. This opinion was given shortly following the permanent implantation of a spinal cord stimulator and thus not only reflects the claimant's status at a difficult post-surgical time but also does not account for her anticipated improvement following this procedure. Further, the opinion does not acknowledge the claimant's work at the substantial gainful activity level for an extended period of time while having all of the indicated impairments with no indication that her symptoms had significantly worsened since stopping this work activity. Dr. Prasad's finding that the claimant could sit, stand, or walk a total of less than four hours over an eight-hour workday is inconsistent with the assessed need for no more than ninety minutes of unscheduled rest breaks, which does not account for much of the workday.

(R. 32.) Smith argues that this analysis was deficient in two ways. First, Smith argues that "the ALJ erred in suggesting that the symptoms listed by Dr. Prasad were not reflected in his treatment notes." (ECF No. 14 at 12.) Second, Smith states the ALJ improperly asserted that Dr. Prasad "should have accounted for [Smith's] 'anticipated improvement' after her implantation of a spinal column stimulator," because there was no evidence Smith had improved post-surgery, and because prior surgeries had failed to improve her condition as well. (Id. at 13.) Finally, Smith argues that the ALJ was incorrect in concluding that Dr. Prasad's opinion was internally inconsistent, since all the doctor's conclusions are easily reconcilable. (Id. at 13-14.)

-16-

On the first point, the undersigned agrees. Dr. Prasad's opinion notes that Smith reported symptoms of "chronic back pain, leg pain, difficulty walking, [and] tremors from pain." (R. 716.) Such symptoms are described throughout Smith's treatment notes. Her consistent back pain and difficulty walking are noted in examination reports as far back as November 2015.[1] (R. 18.) While there is not a specific mention of "tremors from pain" as a reported symptom prior to Dr. Prasad's opinion, prior reports consistently mention the "severe pain" Smith was often in due to her back problems. (R. 18-23.) Further, one new symptom is certainly not the many inconsistencies the ALJ describes. The symptoms Dr. Prasad describes are certainly consistent with and reflected in prior treatment notes.

However, symptom inconsistency was not the only reason the ALJ found Dr. Prasad's opinion unpersuasive. The ALJ also noted that Dr. Prasad's opinion "did not contain any indication that Plaintiff recently had surgery or that there was a possibility of

---

[1]The government argues that "Plaintiff points to examination results and asserts such results support Dr. Prasad's statement that Plaintiff experienced back and leg pain and difficulty walking. However, the ALJ's consistency finding that Plaintiff addresses here pertained to *symptoms*, not examination results." (ECF No. 17 at 11) (internal citations removed). But this distinction is irrelevant. Prior examination results and reports detail the symptoms Smith reported at the time. Any accounts of Smith's prior symptoms must be pulled from prior examination reports. Further, not only did Smith's exam results demonstrate back and leg pain, but she also consistently reported back and leg pain as well.

post-surgical improvement." (ECF No. 17 at 12.) Indeed, Smith had surgery merely four days before Dr. Prasad's examination. Compare (R. 716-18) with (R. 720-22). Smith argues that "the record does not include any evidence showing that [she] improved after the surgery" and that "the ALJ [thus] erred in suggesting that Dr. Prasad should have accounted for medical improvement in his opinion." (ECF No. 14 at 13.) But while an ALJ is "not required to[] explain how [they] considered the factors" beyond supportability and consistency, 20 C.F.R. § 404.1520c(b)(2), they may still consider "other factors that tend to support or contradict a medical opinion or prior administrative medical finding." 20 C.F.R. § 404.1520c(c)(5). The ALJ acted according to the regulations in considering that Dr. Prasad's opinion did not even mention Smith's recent surgery. For the ALJ, this made the opinion less persuasive, since it overlooked such a recent, major procedure and did not account for any "anticipated improvement." (R. 31.) While Smith may take issue with this conclusion, this court is not allowed to "reweigh the evidence or substitute its judgment for that of the administrative fact-finder, even if the reviewing court views the evidence as preponderating otherwise." Powell v. Schweiker, 514 F. Supp. 439, 450 (M.D. Fla. 1981). Further, the ALJ had at least some evidence in the record that Smith had indeed improved after her surgery: her own hearing testimony, where she reported that the surgery "took a little edge

-18-

off" her pain.[2] (R. 53) The ALJ's conclusion regarding Dr. Prasad's failure to mention Smith's recent surgery was a proper application of the regulations.

The same is true of the ALJ's conclusion that Dr. Prasad's opinion is internally inconsistent. The ALJ noted that "Dr. Prasad's finding that the claimant could sit, stand, or walk a total of less than four hours over an eight-hour workday is inconsistent with the assessed need for no more than ninety minutes of unscheduled work breaks, which does not account for much of the workday." (R. 32.) Smith argues that there is no inconsistency; "Dr. Prasad found that Plaintiff could not work for more than four hours and that she would need unscheduled breaks even during the limited hours when she could work." (ECF No. 18 at 6.) The undersigned finds either interpretation defensible. But again, this court may not "substitute its judgment" in place of the ALJ's wherever the ALJ's opinion has some substantial evidence supporting it. Powell, 514 F. Supp. At 450. Here, where ambiguous evidence is subject to two supportable interpretations, the ALJ's interpretation of that evidence must control. See Dyson v. Comm'r of Soc. Sec., 786 F. App'x 586, 588 (6th Cir. 2019) ("this court

---

[2]Q: "Did you find relief with the spinal cord stimulator during the trial week that you had it?"
A: "I felt it worked maybe about anywhere from I'll say right at 50 percent, but it did not take my pain away. It just like –" ...
Q: "But it relieved it by 50 percent?" A: "Yes, ma'am." (R. 52-53.)

does not weigh evidence, assess credibility, or resolve conflicts in testimony – that's the ALJ's job.")

Despite incorrectly describing the consistency of the symptoms Dr. Prasad reported, the undersigned holds that the ALJ nevertheless followed the regulations in articulating how persuasive, supportable, and consistent she found Dr. Prasad's opinion. Her ultimate decisions were backed up by citations to substantial evidence in the large, often contradictory record. Resolving those contradictions was the ALJ's job. "The substantial-evidence standard . . . presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts." Blakely v. Commissioner of Soc. Sec., 581 F.3d 399, 406 (6th Cir. 2009) (citing Mullen v. Bowen, 800 F.2d 535, 545 (6th Cir. 1986)). The undersigned finds that the ALJ was within this zone of choice and that the record provides substantial evidence to support the ALJ's decision.

**D.  Claimant's Reported Symptoms**

A claimant's subjective reports of disabling pain can support a finding of disability, even without "objective evidence of the pain itself." Duncan v. Sec. of Health and Human Servs., 801 F.2d 847, 853 (6th Cir. 1986). Such reports are evaluated with a two part analysis:

> First, we examine whether there is objective medical
> evidence of an underlying medical condition. If there
> is, we then examine: (1) whether objective medical

-20-

evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

Felisky v. Bowen, 35 F.3d 1027, 1038-39 (6th Cir. 1994) (quoting Duncan, 801 F.2d at 853). The ALJ may not "disregard an individual's statements about the intensity, persistence, and limiting effects of symptoms solely because the objective medical evidence does not substantiate the degree of impairment-related symptoms alleged," but must also consider "other evidence in the record" such as "statements from the individual, medical sources, and any other sources." Soc. Sec. Ruling (SSR) 16-3p, Evaluation of Symptoms in Disability Claims, 2017 WL 5180304 (Oct. 25, 2017). Further factors to consider include:

1. Daily activities; 2. The location, duration, frequency, and intensity of pain or other symptoms; 3. Factors that precipitate and aggravate the symptoms; 4. The type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms; 5. Treatment, other than medication, an individual receives or has received for relief of pain or other symptoms; 6. Any measures other than treatment an individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and 7. Any other factors concerning an individual's functional limitations and restrictions due to pain or other symptoms.

Id. Smith argues that "the ALJ did not give clearly articulated reasons for finding Plaintiff's testimony to be inconsistent with the record." (ECF No. 14 at 15.)

The ALJ found that Smith's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." (R. 30-31.) Specifically, the ALJ referenced her prior analysis of the claimant's mental health issues as causing only "moderate severity functional limitations" and limited Smith to only sedentary work due to "her lumbar spine post-laminectomy syndrome, the fatigue caused by her reported poor sleep, and the potential exacerbating effects of her obesity." (R. 31.) Other limitations were imposed due to her "chronic pain syndrome." (Id.)

Contrary to Smith's assertions that "the ALJ failed to provide any analysis as to how [Smith's treatment] notes were inconsistent with [her testimony]," the ALJ specifically noted the reasons that she discounted Smith's testimony and account of her pain. (ECF No. 14 at 16.) When considering the level of limitation that Smith's mental health issues impose, the ALJ exhaustively detailed Smith's treatment notes and considered her reports of pain, her daily activities, the side effects of her medications, and her hearing testimony.[3] (R. 27-29.) Despite Smith's argument that "the ALJ did

---

[3]Granted, such consideration was not done in paragraphs immediately around the ALJ's conclusion but was instead done under the section

not address [her] daily activities," (ECF No. 14 at 17), the ALJ noted that Smith's "children drive her to appointments, help her with self-care activities, and do most household chores . . . and reported she cannot visit others due to pain," (R. 27). The ALJ also noted that Smith's psychiatric medications made it so that she "was not able to focus, could not control her bodily functions, felt loopy, and did not understand what was going on." (R. 28.) After considering this evidence, the ALJ found Smith's "more extreme symptoms" were "not believable or were not reported during her many evaluations or examinations" because "[she] has given conflicting reports of her symptoms and history to different providers over time, which calls the reliability of her assertions into question." (R. 26-27.) Further, some doctors had reported that Smith was possibly "malingering" in her reported symptoms. (R. 25); see Lovejoy v. Comm'r of Soc. Sec., 2011 WL 5434011, at *6 (N.D. Ohio Nov. 8, 2011) ("Given the consistent evidence of malingering in Lovejoy's file," there was sufficient evidence to support ALJ's decision that claimant was not disabled.) The ALJ even explicitly stated that she "found the hearing testimony and

_____

regarding Smith's mental health limitations, as the ALJ explicitly noted when declining to "repeat that analysis here." (R. 31.) Nothing required the ALJ to do so. See Terry v. Saul, No. 20-cv-1133-TMP, 2021 WL 2222738, at *6 (W.D. Tenn. Jun. 2, 2021) (noting that even though the ALJ "only briefly analyzed the persuasiveness" of a medical opinion, "earlier in the opinion" the ALJ had reviewed that opinion in "greater detail.")

other statements of the claimant partially persuasive to the extent that I accept that she genuinely believes herself to be so limited," but noted that "these are purely subjective layperson assessments that are not fully consistent with the overall record or supported by the opinions of acceptable medical sources." (R. 25); see Temples v. Comm'r v. Soc. Sec., 515 F. App'x 460, 462 (6th Cir. 2013) ("The ALJ reasonably discounted Temples' testimony concerning the severity of her pain because her testimony was inconsistent with the medical evidence in the record") (citing 20 C.F.R. §§ 404.1529(a), 416.929(a)).

Far from disregarding Smith's statements about her pain and the subjective evidence of that pain, the ALJ considered both multiple times in her evaluation and ultimately found them only partially persuasive for the reasons described above. See Schmiedebusch v. Comm'r of Soc. Sec., 536 F. App'x 637, 649 (6th Cir. 2013) ("an ALJ is not required to accept a claimant's subjective complaints and may properly consider the credibility of a claimant when making a determination of disability.") (quoting Jones v. Comm'r of Soc. Sec., 336 F.3d 469, 475-76 (6th Cir. 2003)) (internal quotation marks removed).[4] In doing so, the ALJ

---

[4]While the regulations have since abandoned references to a claimant's "credibility," the same analysis applies to a claimant's "subjective complaints of pain or other symptoms." Williams-Holland v. Comm'r of Soc. Sec., No. 20-2387-TMP, 2021 WL 4592815, at *6 n.5 (W.D. Tenn. Oct. 6, 2021) (discussing "credibility" and collecting cases).

considered Smith's inability to do chores, (R. 27), need to have others shop for her, (R. 27), the side effects of her medication, (R. 28), that she cannot visit others due to pain, (R. 27) and that she generally avoids going to public places, (R. 26). Further, the ALJ considered Smith's "chronic pain syndrome" and other reported symptoms in limiting her to "work at the sedentary exertional level." (R. 31.) The ALJ properly considered what the regulations require and articulated that consideration. This court cannot disagree absent a lack of substantial evidence, even where "there is substantial evidence in the record that would have supported an opposite conclusion." Smalley v. Comm'r of Soc. Sec., No. 20-1865, 2021 WL 4026783, at *2 (6th Cir. Sept. 3, 2021) (quoting Blakely, 581 F.3d at 406). Substantial evidence existed to support the ALJ's opinion.

### III. CONCLUSION

For the reasons above, the decision of the Commissioner is AFFIRMED.

IT IS SO ORDERED.

s/ Tu M. Pham
TU M. PHAM
Chief United States Magistrate Judge

December 21, 2021
Date

-25-